713 So.2d 631 (1998)
In re Mary GUIDRY TRUST.
No. 97-1210.
Court of Appeal of Louisiana, Third Circuit.
May 6, 1998.
John Robert Shea, Lafayette, for Mary Guidry.
James Paul Doherty, Jr., Opelousas, for Jeffrey M. Bassett.
Before YELVERTON, THIBODEAUX, PETERS, SULLIVAN and GREMILLION, JJ.
YELVERTON, Judge.
The issue in this case is whether Mary Guidry, who is both the settlor and sole beneficiary of a trust, has the power to terminate or revoke the trust despite the fact that it is an irrevocable trust. The trustee is the defendant, and he denies that the settlor or beneficiary has that right. No facts were disputed, and so using a summary judgment, the trial judge agreed with the trustee and *632 preserved the trust. Ms. Guidry appealed. We affirm.

FACTS
On September 16, 1991, Ms. Guidry donated and delivered $200,000 to Jeffrey M. Bassett, her attorney, to create a trust solely for her own benefit. Ms. Guidry was the designated settlor, as well as the sole principal and income beneficiary. The trust was created with settlement funds which Ms. Guidry received for the wrongful death of her husband. Ms. Guidry appointed Mr. Bassett, the attorney who had represented her in the wrongful death claim, as the trustee of the trust.
The trust was designated as an irrevocable trust to be administered and managed by Mr. Bassett. Under the terms of the trust, one duty of Mr. Bassett was to distribute income to the sole beneficiary, Ms. Guidry. Ms. Guidry did not reserve the right to revoke the trust, nor did she reserve the unrestricted right to modify the trust. The right of termination was vested in the trustee, Mr. Bassett.
The relevant portions of the document read:
1.2 IRREVOCABILITY. This Trust shall be irrevocable. Settlor shall have no right or power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke or terminate this Trust or any of the terms of this Trust, in whole or in part or to designate the persons who shall possess or enjoy the Trust Property or the income therefrom.
1.3 PURPOSE. The primary purpose of this Trust is to provide for the support, maintenance, education, health and welfare of Settlor.
5.1 DATE OF TERMINATION. This Trust shall last for the longest period of time allowed by law. The Trustee may terminate this Trust earlier with respect to the share of the Principal Beneficiary and distribute part or all of the Beneficiary's share of the principal hereof if, in the sole discretion of the Trustee, it is in the best interest of the Beneficiary, considering the demonstrated ability of the Beneficiary to handle money wisely, and the judgment, prudence, and discretion of the Beneficiary.
From the provisions of the trust just quoted, it appears that Ms. Guidry was not sure of her own ability to manage the large amount of cash received from the wrongful death suit. That being so, she took advantage of Louisiana's Trust Law and set up an irrevocable trust, and she even went so far as to relinquish her right to reserve the power to revoke the trust in the future. She further stated that the trust was to last as long as legally possible, with the one exception being that if and when the trustee determined that it would be in the beneficiary's best interest and the beneficiary had demonstrated the ability to handle money wisely through proper judgment, prudence, and discretion, then the trustee could terminate the trust.
On May 13, 1996, Ms. Guidry, acting in her capacities as settlor and sole beneficiary, filed suit against the trustee, Mr. Bassett, to revoke the trust. She argued that because there was an identity between the persons of settlor and beneficiary, her desire to revoke the trust should be recognized as a conventional or legal return under the civil code articles dealing with donations, and that the money in the trust should be returned to her. Mr. Bassett, as trustee, answered and asserted that neither the settlor nor the beneficiary had the right to revoke or terminate the trust.
The trial judge concluded that Ms. Guidry created an irrevocable trust which could only be revoked at the discretion of the trustee. The trial judge reasoned that, under the provisions of the trust, only the trustee had the right to revoke and/or terminate the trust, and that the settlor, Ms. Guidry, had waived this right. He further determined that no legal or conventional return had occurred in favor of Ms. Guidry. The trial judge said:
There is no contention that the trustee, Bassett, has performed his duties in other than an exemplary manner. Bassett, as fiduciary, has apparently done an excellent job in handling the trust estate. Therefore, *633 whatever the reason for Guidry wishing to terminate the trust and receive the trust property, it is of no concern to the Court.
We agree with the trial judge.

LAW AND ANALYSIS
The facts being undisputed, the parties submitted the trust document, pleadings, and memoranda to the trial court for summary judgment. The only issue is a legal one-i.e., whether an irrevocable trust can be revoked when the settlor and sole beneficiary are one and the same person and that person wants the trust to end.
Louisiana has given its citizens the option of entering into trusts. In this case Ms. Guidry, as settlor, created a trust for the purpose of providing for her own support, maintenance, education, health, and welfare. While she may have had many reasons for wanting to do this, it appears that her worry was that she would be unable to manage the large amount of money she received in the wrongful death suit. She therefore made the trust irrevocable, and the only reason stipulated for termination of the trust was if she proved herself capable of managing her money. The power to decide whether she ever demonstrated that capability was given to the trustee to be exercised by him in his sole discretion. She has since changed her mind, and now she wants to undo the trust and get back the money. There are no allegations that the trustee is being arbitrary or is mismanaging the money. In fact, he does not even receive remuneration for the performance of his duties. Ms. Guidry believes that it is her money, that she set up the trust and is the settlor and sole beneficiary, and that no one will be hurt by terminating it; she therefore urges that it should be terminated. We disagree for the following reasons.
A trust is a relationship created when a settlor transfers title to property to a trustee, who is charged with administering the property as a fiduciary for the benefit of a beneficiary. La.R.S. 9:1731. The settlor can create a trust where the settlor names herself as the sole beneficiary of income or principal or both. La.R.S. 9:1804. When this is done, however, a trust is created that is subject to all of the provisions of the Louisiana Trust Code, just as though a trust was created with a third person being named as beneficiary. As both settlor and sole beneficiary, Ms. Guidry has all the rights and responsibilities that accompany each of those roles, but no more. So, the question in this case is simply whether Ms. Guidry, either as settlor or sole beneficiary or by agreement asserted in her dual roles, can terminate an otherwise irrevocable trust.
In McLendon v. First National Bank of Shreveport, 299 So.2d 407 (La.App. 2 Cir. 1974), a similar situation was presented. Although in that case the settlor was not the beneficiary, both the settlor and the beneficiary were in agreement that the trust should terminate. The trustee disagreed. In the trust agreement there was language stating that the trust could be terminated only on consent of the settlor, trustee, and beneficiary. The appellate court did not allow termination of the trust, stating:
The primary question presented by this appeal is whether the consent of the survivor of the two settlors and the beneficiary constitute sufficient authority for the court's termination of the trust. Stated differently, the question is whether or not it is necessary, under the trust agreement and the law under which the trust was created, that the trustee consent to the trust's termination.
... The trust, by its terms, stipulated that it was to endure ... the life span of the beneficiary. Provision was made, however, for an earlier termination upon the unanimous consent of all the parties at interest; namely, the settlors, the beneficiary, and the trustee.
. . . . .
... [T]he authorization to the ... trustee to consent to or oppose termination was given without any restriction ... in the exercise of that power.
Id. at 408-409.
As is currently the rule found in La.R.S. 9:2028, the rule applied in McLendon was that "a trust cannot be terminated by consent, even with the unanimous consent of all *634 parties at interest, that is, the settlors, the beneficiary, and the trustee, unless otherwise provided for by the terms of the trust agreement." Id. at 409.
The McLendon court further stated:
The concept of trust indestructibility is inherent in our Louisiana Trust Law. In a comment with reference to the Trust Estates Act, with which we are herein primarily concerned, it is recited in 1 La. L.Rev. 774, 778 [authored by Frank P. Stubbs]:
"The Act upholds the doctrine that a valid trust, once it is created, should run the precise course and the full course which its settlor has charted in its terms. Deviations can be ordered only by the court and then only the better to carry out the purposes of the trust. The order to turn back or to abandon the trust can be given only by the court and then only for the most compelling reasons. Specifically, the parties at interest are forbidden to break up the trust in violation of its terms by consent between or among themselves. This salutary rule against premature destruction of the trust is deeply grounded in doctrine and in reasons of public policy which have no place in this discussion. It should be remembered that the settlor `writes his own ticket' with respect to revocation and modification; that he himself sets the date of termination; that if he wishes to give the beneficiary or the trustee, or both of them acting together, the right to bring the trust to an earlier end he is free to do so;...."
This concept of indestructibility has been carried over into the new trust code. In an article entitled "Some Interesting Features of the Proposed Trust Code," in 24 La.L.Rev. 712 [authored by David W. Robertson], it is commented:
"Under the proposed trust code, as under the present Trust Estates Law, a trust would not be terminable at the will of all the parties at interest-settlors, beneficiaries, and trustees-unless the trust instrument reserved a power of revocation. This stringent provision against terminability is contrary to the laws of most other states, which permit the settlor and all the beneficiaries to terminate the trust, even in the face of active opposition by the trustee, proceeding on the theory that a trustee has no such interest in the trust as to entitle him to oppose termination." (emphasis supplied.)
The settlors, in creating the present trust invoked that provision of the Trust Estates Act which permits termination if the right of revocation is expressly reserved. However, in so doing, they expressly conditioned the exercise of that right upon unanimity of consent of all the parties at interest, that is, of the trustee as well as the settlors and the beneficiary. For whatever reason the settlors may have had in preventing the termination of the trust without the consent of the trustee, whether to provide and secure support for the son free from his own improvidence and claims of creditors, the trust agreement is clear and unambiguous that the consent of the trustee be given as a condition precedent to the trust's termination.
Id. at 410.
Although in the McLendon case the settlor and beneficiary were different persons and in this case they are one person, we find the facts virtually indistinguishable under the trust law. For whatever reason, Ms. Guidry created a trust and waived the right to revoke, expressly stating that the power of termination was in the trustee. The only way for termination to occur under the provisions of the trust agreement is if the trustee determines that Ms. Guidry is able to manage her money prudently. The agreement of the settlor and beneficiary (being one person here) is insufficient.
Our supreme court recently stated in Albritton v. Albritton, 600 So.2d 1328, 1332 (La.1992) (citation omitted):
We have held this concept of trust indestructibility is "inherent in our Louisiana trust law." Taken as a whole, we believe these rules set forth a public policy of protecting the trust instrument from any modification or termination contrary to the settlor's clearly expressed intent. These are imperative rules of public order, and *635 any violation of these rules is an absolute nullity.
Ms. Guidry wishes to invoke other articles of the Trust Code and Civil Code in an attempt to avoid the rule of trust indestructibility. She relies first on the claim that this is an inter vivos and gratuitous donation. Under La.R.S. 9:2043, a "gratuitous disposition may be revoked for the causes and under the limitations specified in the general law of donations, whether or not the right to revoke has been reserved." Under La.Civ. Code art. 1559, donations inter vivos can be revoked or dissolved on account of the following causes:
1. The ingratitude of the donee;
2. The non-fulfillment of the eventual conditions, which suspend their consummation;
3. The non-performance of the conditions imposed on the donee;
4. The legal or conventional return.
It is Ms. Guidry's opinion that somehow, in her being both the settlor and the beneficiary, a legal or conventional return has taken place by the concurrence between the settlor and beneficiary to terminate the trust. Ms. Guidry's interpretation of the law in this regard not only derogates from the general principle of trust indestructibility but is a misapplication of the rules governing legal and conventional returns.
These rules were recently discussed by our supreme court in Succession of Doll v. Doll, 593 So.2d 1239 (La.1992). "The conventional return refers to the right of return specially reserved or stipulated in favor of the donor in the act of donation itself." Id. at 1254-1255. La.Civ.Code art. 1534 provides for the stipulation for the right of return to the donor. In the instant case there was no such stipulation made in the contract creating the trust. It cannot now be argued that an agreement later entered into for a donee to give back the objects effects the conventional return contemplated by Article 1534. Such an event would simply be a new transaction giving back the same objects; it would not be a return as defined by the code. As donor, Ms. Guidry did not reserve the right of return and cannot use conventional return for revocation.
Likewise, legal return is inapplicable in this case. In Doll, 593 So.2d at 1255, the court stated that "[i]n contrast to the conventional return, arising by agreement of act of the parties, the legal return arises by operation of law." The court gave La.Civ. Code arts. 897 and 898 as an example of a legal return. Under these articles a return occurs by operation of law if an ascendant has given immovables to his descendant and the descendant, without posterity, dies before the ascendant dies. In that event the immovables given return to the ascendant by operation of law.
The Doll court then applied legal return in the case of collation in kind. Collation, of course, is a real or supposed return of donated property. The duty to make the return arises by operation of law. The court stated: "Collation arises from an obligation, or duty, imposed upon the heir by law. Accordingly, the right and the duty of collation arise by operation of law, and collation in kind is a legal return." Id. at 1255 (citations omitted).
To have a legal return in the present case, we would have to find some provision of law stating that when the will of the settlor and the will of the sole income and principal beneficiary of a trust coincide to terminate a trust, then there is a legal return. There is no such provision of law. In fact, there is law which directly contradicts such a proposition. As already quoted, La.R.S. 9:2028 states: "The consent of all settlors, trustees, and beneficiaries shall not be effective to terminate the trust or any disposition in trust, unless the trust instrument provides otherwise." The present instrument did not provide otherwise, and so this argument is without merit.
There is an additional reason for this conclusion. It involves the nature of the rights of the parties involved in a trust. Ms. Guidry's argument is that there is an identity between the persons of the settlor and beneficiary such that their agreement to return to the settlor what was given to the beneficiary should terminate the trust. This is how she arrives at her conclusion that a legal or conventional return is effectuated, thus *636 revoking or dissolving the donation when the trust was created. We point out, however, that the settlor donated title in the trust property to the trustee, not to the beneficiary. In Reynolds v. Reynolds, 388 So.2d 1135, 1138-1139 (La.1979) (alteration in original) our supreme court stated:
"A trustee is a person to whom title to the trust property is transferred to be administered by him as fiduciary." La. Rev.Stat. 9:1781
That the title transferred to the trustee... was intended to vest ownership in the trustee is made manifest by the meaning of the word "title". Perhaps the most common use of the word in the law is in the sense of ownership of property. 86 C.J.S., Title p. 907. It is therefore contrary to well accepted principles of statutory construction to disregard the clear meaning and letter of the statute under the pretext of pursuing its spirit. La.Civil Code art. 13. Words of a law are generally to be understood in their most usual signification. La.Civil Code art. 14.... "The ownership of a thing is vested in him who has the immediate dominion over it, and not in him who has a mere beneficiary right in it." La.Civil Code art. 489.
No statute in Louisiana confers upon a trust beneficiary the ownership of the corpus of the trust; the interest of the beneficiary referred to in Sections 1971 and 1972 of Title 9 of the Revised Statutes is an interest in the trust, not in the corpus. Likewise, no Louisiana case (Succession of Stewart, 301 So.2d 872 (La.1974) and St. Charles Land Trust v. St. Amant, [253 La. 243] 217 So.2d 385 (La.1969), in particular) confers upon the beneficiary a right of ownership in the corpus of the trust.
....
The beneficiary of this trust had no right to administer the trust property; the full authority in that respect was vested in the trustee. As beneficiary she could not sell, mortgage, lease or otherwise alienate or encumber the trust property. She was without even the slightest indicia of ownership so long as the trust endured.
It is clear based on the nature of the rights bestowed on the beneficiary by the settlor that the beneficiary's interest in the trust is not what had at one time been owned by the settlor. It is the trustee who acquires title to the property, and only he has a right to manage that property. The beneficiary has no right to sell, mortgage, lease, or in any other respect dispose of the property, which also means she would have no right to "return" the property to the settlor. A "return" can take place only between the donor and donee. Ms. Guidry, as settlor, was the donor, but she was not and is not, as beneficiary, the donee.
Furthermore, as expressly stated in Article VII of the trust instrument in this case, a spendthrift trust was created. La.R.S. 9:2007 states that a "declaration in a trust instrument that the interest of a beneficiary shall be held subject to a `spendthrift trust' is sufficient to restrain alienation by a beneficiary of the interest to the maximum extent permitted by this sub-part." The relevant language in the trust in this case states:

Alienation. The interest of the Beneficiary in the Trust shall be subject to a spendthrift Trust and shall not be subject to the claims of creditors or others. The Beneficiary of this Trust is prohibited from alienating any interest of the Trust, voluntarily or involuntarily, without the express written consent of the Trustee.
As beneficiary, Ms. Guidry has no authority to transfer her interest in the trust to any other person, including the settlor (which also happens to be Ms. Guidry) without the trustee's express written consent.
For all of the above reasons, we conclude that the trust in this case is irrevocable and can be terminated only by the express consent of the trustee. Neither the law nor the express provisions within the trust document permit a conventional or legal return. The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
Thibodeaux, J., dissents and assigns written reasons.
*637 THIBODEAUX, Judge, dissenting.
Louisiana Revised Statute 9:2041 states that "[e]xcept as otherwise provided in this Code, a settlor may revoke a trust in whole or in part only if he has reserved the right to revoke the trust or an unrestricted right to modify the trust." As a general principle, a trust is susceptible to revocation in three instances:
(1) where the settlor reserves the right to revoke the trust;
(2) where the settlor reserves the unrestricted right to modify the trust; and,
(3) where the grounds exist to revoke a donation under the general law of donations.
McInnis v. McInnis, 618 So.2d 672 (La.App. 2 Cir. 1993); see also 11 Oppenheim and Ingram, Louisiana Civil Law Treatise: Trusts § 311, at 333-334 (1977). The third ground for revocation of a disposition in trust has been statutorily incorporated in La.R.S. 9:2043 of the Louisiana Trust Code. Louisiana Revised Statute 9:2043 provides the following:
An onerous disposition in trust may be rescinded for the causes and under the limitations specified in the general law of contracts. A gratuitous disposition may be revoked for the causes and under the limitations specified in the general law of donations, whether or not the right to revoke has been reserved. For this purpose every disposition in favor of a particular beneficiary shall be treated as a separate donation or contract, as the case may be.
(Emphasis supplied).
Under La.R.S. 9:2043, a gratuitous disposition in trust is susceptible to revocation under the general law of donations, even if the settlor fails to reserve the right of revocation. From a practical standpoint, a gratuitous disposition in an inter vivos trust is comparable to a donation inter vivos; the same rules are applicable to both forms of donation. Thus, a gratuitous disposition in trust may be revoked in a situation where at least one of the causes for the revocation of a donation inter vivos exists. A donation inter vivos may be revoked or dissolved based upon any one of the following causes:
1. The ingratitude of the donee;
2. The non-fulfillment of the eventual conditions, which suspend their consummation;
3. The non-performance of the conditions imposed on the donee; or
4. The legal or conventional return.
La.Civ.Code art. 1559.
Ms. Guidry created a valid inter vivos trust in which she executed a gratuitous disposition to herself. Ms. Guidry designated herself as both the principal and income beneficiary. As the settlor of the trust, Ms. Guidry is permitted to designate herself as the sole beneficiary of income or principal, or both. See La.R.S. 9:1804. Ms. Guidry argues that the gratuitous disposition in this trust should be revoked because her proposed rescission of the disposition caused either a legal or conventional return, which is a valid ground for the revocation of both a donation inter vivos and an inter vivos trust.
In Succession of Doll v. Doll, 593 So.2d 1239 (La.1992), the Louisiana Supreme Court addressed the nature of and distinctions between a legal and conventional return. The court stated:
The conventional return refers to the right of return specially reserved or stipulated in favor of the donor in the act of donation itself. Thus, the conventional return envisions a rescission of the donation by mutual consent of the donor and donee.
Id. at 1254-55. (citations omitted). Similarly, in this suit, Ms. Guidry's rescission of the disposition in trust, in her capacity as the sole beneficiary (i.e., donee), properly effectuated a conventional return. Ms. Guidry's disposition in trust was granted in favor of herself, and not a third party. Ms. Guidry was the designated settlor and the sole principal and income beneficiary. The rights of both the donor and donee of the trust property are vested in the same individual. Contrary to Mr. Bassett's argument, the trustee does not stand in the shoes of the donee. The trustee merely acts as a fiduciary for the benefit of the donee, or beneficiary.
Although Ms. Guidry did not stipulate the terms for a conventional return within the *638 trust instrument, her decision to revoke the trust manifests the mutual consent of both the donor and donee to rescind the gratuitous disposition in trust. Therefore, her proposed rescission of the gratuitous disposition effectuated a conventional return. In the absence of other beneficiaries and/or settlors, the disposition in trust should revert to the lone settlor of the trust, Ms. Guidry. See La.R.S. 9:2046 (stating that a "[r]evocation or rescission shall cause the trust to fail and the trust property ...shall revert to the settlor or his heirs, legatees, or assignees ....").
Conversely, Mr. Bassett argues that Ms. Guidry's failure to reserve the right of revocation prohibits her from revoking the trust. Mr. Bassett's argument fails under my analysis of this matter. The provision in which Ms. Guidry waived the right to alter, amend, revoke, or terminate the trust is of no consequence. The cause for the revocation of this trust rests under the general law of donations, specifically La.Civ.Code art. 1559(4), under the facts before us.
Despite a waiver of the right of revocation, the fact that a conventional return was achieved provides an adequate, independent basis for the revocation of the trust. Furthermore, pursuant to La.R.S. 9:2043, the disposition in trust can be revoked in this instance because there is sufficient cause to revoke a donation inter vivos under the general law of donations. Louisiana Revised Statute 9:2043 also provides that such a revocation will occur even if the settlor fails to reserve the right of revocation.
Ms. Guidry's recission of the disposition in trust effectuated a conventional return, a valid cause for the revocation of a donation inter vivos. The occurrence of the conventional return also established a basis for the revocation and/or termination of the disposition in trust. Under the specific circumstances of this case, the trial court and the majority erred in finding that the trust could not be revoked by the settlor, Ms. Guidry.
For the foregoing reasons, I respectfully dissent.