MIRIAM G. WALTZER, Judge.
hWe grant the application of Total Benefit Services, Inc. (TBS) for emergency supervisory writ and -reverse the trial court’s ruling denying TBS the opportunity to take testimony and to subpoena and obtain documents relevant to the issue of the invalidity of the contract entered into between respondents, United Health Care (United) and the City of New Orleans (City).
During a hearing on the merits of TBS’ suit claiming that the contract between United and the City is invalid because of violations of the Public Bid Law, LSA-R.S. 38:2211 et seq., United’s Vice-President, Richard Collins, testified that United paid a commission to an agent for the contract. It is clear from the materials submitted to this Court that TBS had no knowledge of the payment of the commission on the United contract prior to the taking of Collins’ testimony at the disqualification hearing. Furthermore, it is apparent that TBS learned, in the course of testimony at the hearing by United’s corporate representative, Kim Lewis, that United considered Wayne Francingues to be an “agent”. Documents provided by the City to TBS identified Francingues as having been the city’s agent, who worked with or for the City. TBS advises this Court that it does not know whether Mr. Francingues is the person to whom United paid its commission; however, it | appears from City documents and from those provided by Fran-cingues that he may have been “on both sides” of the contract negotiation. Whether compensated or not, a person performing a governmental function is held to be a public employee under LSA-R.S. 42:1102(18)(c). A consultant performing governmental functions has been held to come within the definition of public employee. Commission on Ethics for Public Employees v. IT Corporation, 423 So.2d 695 (La.App. 1 Cir.1982).
LSA-C.C. art. 7 provides that persons may not by their juridical acts derogate from laws, such as the Public Bid Law and the ethics code in this case, which are enacted to protect the public interest; any act in derogation of such laws, is an absolute nullity. TBS points out that if the evidence confirms this dual capacity, and that the public employee received a commission on the publicly bid contract between the City and United, then that contract .would have been confected in violation of the Code of Governmental Ethics, LSA-R.S. 42:1102(18), and would be an absolute nullity. LSA-C.C. art. 2030 provides for a private right of action to assert the absolute nullity of any contract that violates a rule of public order. Furthermore, LSA-C.C. art. 1968 provides that the cause of an obligation is unlawful when its enforcement would produce a result prohibited by law or against public policy.
*1069 The Public Bid Law was enacted in the interest of Louisiana’s taxpayers, and its purpose is to protect them against contracts entered into by public officials because of favoritism and involving extortionate prices. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1359 (La. 1991). We note from the application for supervisory review that TBS’ rejected bid was over $12,000,000 LESS than United’s bid.
| 3 Clearly, under the relevant statutory and jurisprudential authorities, Fran-cingues may be shown to be a city employee within the meaning of the statutes prohibiting commission payments, and, if TBS can provide evidence through testimony of city employees, United representatives and Francingues that the applicable statutes were violated, the contract becomes an absolute nullity.
We find no reason to deny TBS the opportunity at this stage of the proceedings to adduce that evidence. Since the validity of the contract was placed at issue at the inception of the instant case, the newly discovered additional ground for invalidity is quite clearly relevant to the determination of the ultimate issue, that is, the validity of United’s contract.
We have considered carefully the submissions by counsel and by the trial judge, and are not persuaded that the writ application should be denied.
Since TBS is not seeking a declaratory judgment on an ethics issue or a judgment imposing sanctions on the errant public servant, the respondents’ jurisdictional and prematurity arguments have no merit. As noted above, the civil code provides for a private right of action under these circumstances.
The argument that the newly discovered ground for nullity is somehow beyond the scope of the pleadings is likewise without merit. TBS claims in its original and amended petitions that the contract is invalid; its pleadings properly can be expanded to allow the newly discovered basis for nullity. There is nothing in the submissions to support United’s claim that TBS has engaged in trial-by-ambush; indeed, the record shows that TBS counsel were surprised by the United vice-president’s testimony that the company had paid a commission for the contract.
|4Likewise, we are not persuaded by the City’s argument that the trial court’s action kept out only “irrelevant” evidence. The evidence in question goes to the very heart of the claim that the United contract is invalid.
We are convinced that the trial court’s assurance to counsel, stated in her per curiam, to try “at a later date” the newly discovered ground for absolute nullity of the United contract is impractical and can cause irreparable damage to city employees and their health care providers. Furthermore, if this evidence is not allowed at this stage of the proceeding, and the question of nullity based on violation of the ethics statute is heard “at a later date” we have grave concern for the continuity of coverage and health care for employees covered by the contract insurance. For the same reason that this Court kept the TBS contract in place during the pendency of this proceeding, the United contract should not be allowed to go into effect until its validity survives both the original attack and the newly discovered grounds. The chaos that would occur among employees and health care providers if the United contract were put into effect and “at a later date” found to be invalid is self-evident.
For the foregoing reasons, we grant TBS’ application for emergency supervisory writ, reverse the trial court’s ruling, and remand for further proceedings consistent with this opinion.
*1070 WRIT GRANTED. TRIAL COURT RULING REVERSED. CASE REMANDED.
ARMSTRONG, J., concurs with reasons.
McKAY, J., dissents with reasons.