MOORE, J.
|, George A. Olsen Jr. and Hanh T. Williams appeal a summary judgment finding that assignments of interest in a mineral lease in their favor were absolute nullities and that the interest belonged to the succession of Fred L. Houston, who prior to his death executed the initial assignment. For the reasons expressed, we affirm.

Factual Background

Fred L. Houston and his wife granted a mineral lease (“the Tenneco lease”) over 40 acres of land they owned in DeSoto Parish in July 1974. Tenneco, or its assignees, drilled 10 wells on the three units affecting the tract; the lease has been highly productive. At some point, J-W Operating became the owner and operator of these wells and units. In 2001, Mrs. Houston died, and Houston became sole owner of the tract and the lease.
In August 2005, Houston formed an inter vivos trust called the Fred L. Houston Trust. He placed various assets, including the Tenneco lease, in the trust corpus. The instrument declared the trust “irrevocable and may not be revoked at any time under any circumstances[,]” including “any action to * * * modify or negate Settlor’s intended effect of protecting the properties *1019 and assets transferred to the Trust[.]”[1] It designated Houston as both the income and principal beneficiary, with the provision that upon his death, “his interest in the trust shall vest in his estate (his heirs or legatees) free of trust.” Also, “This trust shall be a spendthrift trust to the maximum extent permitted by the applicable laws governing such trusts[.]” It gave the trustee broad management powers and a compensation of 50% of all revenue from a 12separate mineral lease (in Webster Parish). Finally, it named local insurance broker Hanh T. Williams as trustee. Ms. Williams signed not only the instrument of trust but also the act of assignment whereby Houston transferred the Tenneco lease to the trust corpus.
In April 2006, an entity called Noble House Investments Inc., through its president, George A. Olsen Jr., sent a letter to Houston (“to the attention of’ Ms. Williams), offering to buy the trust’s interest in the Tenneco lease for $34,000. Four days later, on April 26, Houston signed, in his personal capacity, an assignment (the “Noble House assignment”) of royalty interest in the Tenneco lease to Noble House for “good and valuable consideration.” Notably, the Noble House assignment made no mention of the trust. By letter agreement that same day, Noble House promised to assign to Ms. Williams “50% of the interest purchased as soon as the new division orders are complete.” Noble House executed an assignment (the ‘Williams assignment”) to that effect on August 8, 2006. Noble House also assigned all its remaining interest to Olsen (the “Olsen assignment”) on September 12, 2007.
Houston died on September 23, 2008. Under the trust instrument, the corpus, including the Tenneco lease, immediately vested in his estate. Armand Roos was confirmed as testamentary executor of the succession. Apparently, he notified J-W Operating that the trust, and now the succession, claimed the Tenneco lease.

Procedural History

J-W Operating filed this petition for concur sus in April 2011, naming as defendants Olsen, Ms. Williams and Houston’s succession. It alleged that |3it had suspended royalty payments in August 2009 because of the dispute over ownership; in the 19 months since, the Tenneco lease had accrued royalties of $67,240.98, which were placed in court registry.
Olsen and Ms. Williams filed general denials, urging in essence that even if, by the Noble House assignment, Houston conveyed a thing he did not own, the assignment was only a relative nullity. The assignment included a warranty against eviction; upon Houston’s death, the Ten-neco lease reverted to his estate, and the succession was bound to honor the warranty. Each demanded recognition of his or her 50% interest.
Roos answered on behalf of the succession that the Noble House assignment was an absolute nullity; he demanded recognition of the succession’s 100% interest.
Olsen and Ms. Williams then filed various exceptions, including no right of action, urging that Roos was not a party entitled to assert the trust’s claim of relative nullity, and no cause of action, urging that after-acquired title cured the relative nullity before suit was filed. The district court denied these exceptions by judgments dated August 23, 2011.[2]
*1020 Roos filed the instant motion for partial summary judgment, seeking a declaration that the succession owned the Tenneco lease and an award of all accrued royalties, less a credit for the purchase price paid by Noble House. He argued that all three assignments were absolute nullities: they violated the spendthrift provision of the trust instrument, and the Noble House assignment was actually orchestrated by Ms. Williams, who as trustee was 14prohibited from acquiring trust property, La. R.S. 9:2085 B. In support, he attached Ms. Williams’s videotape deposition and a portion of Olsen’s oral deposition. Unflat-teringly, these showed that Ms. Williams had contacted Olsen, telling him that she represented Houston and had the authority to negotiate the sale of the mineral interest; together they decided how much to offer him, and agreed to split the mineral interest, less a finder’s fee for Ms. Williams; as a result, Olsen’s corporation made the offer to Houston, which he accepted; and Olsen and Ms. Williams ultimately did split the mineral interest 50-50. Ms. Williams paid $14,000 for her share of the deal.
Olsen filed a cross-motion for partial summary judgment, seeking an award of 50% interest in the Tenneco lease. He reiterated that upon Houston’s death, the Tenneco lease was transferred from the trust to the estate, thus creating after-acquired title under La. C.C. art. 2452. He also argued that the Noble House assignment .was not a quitclaim deed, and hence included a warranty against eviction. In support, he attached his own affidavit that Houston said he (Houston), and not the trust, actually owned the Tenneco lease, and that he (Olsen) relied on this without a title exam.
Ms. Williams did not file her own motion for summary judgment, but she opposed Roos’s.

Action of the District Court

After the matter was submitted on briefs, the court found that the Noble House assignment violated a rule of public order, that of protecting the settlor’s intent as set forth in the trust document, Albritton v. Albritton, 600 So.2d 1328 (La.1992), particularly the spendthrift provisions, and the sale of the corpus would divest the beneficiary of his interest. The court ^declared the Noble House assignment, as well as the Williams and Olsen assignments, absolute nullities. It granted Roos’s motion for partial summary judgment and denied Olsen’s. The court also denied Olsen and Ms. Williams’s motion for new trial or reconsideration, as well as Roos’s motion to amend the judgment.
Olsen and Ms. Williams filed separate motions for suspensive appeal. They have joined on brief, advancing five assignments of error.

Discussion: Absolute or Relative Nullity?

By their first assignment of error, appellants urge the district court erred in finding that the purported transfer of trust property by Houston was an absolute nullity when it was not an attempt to transfer his beneficiary interest in the trust. By their second assignment, they urge the court also erred in finding that the subsequent acquisition by Houston of the lease he attempted to sell did not cure the relative nullity created by his attempted assignment of the lease.
They argue, in essence, that the Noble House assignment was only a relative nullity, cured by subsequent acquisition. An absolute nullity is one that violates public order, La. C.C. art.2030, and includes a contract that would violate a state statute, Lieber v. Caddo Levee Dist., 27,267 (La.App. 2 Cir. 8/23/95), 660 So.2d 188, writ denied, 95-2355 (La.12/8/95), 664 *1021 So.2d 427. The sale.of a thing belonging to another does not convey ownership, La. C.C. art. 2452, but such a sale is ratified if the seller acquires title before the buyer sues for nullity; this is the doctrine of “after-acquired title,” Arkansas La. Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202 (1953); Bradstreet v. Kinchen, 2008-0126 (La.App. 4 Cir. 4/1/09), 10 So.3d 331, writ denied, 2009-0953 (La.6/19/09), 10 |6So.3d 737. Appellants concede that Houston did not have title to the Tenneco lease, but argue that his “mistake or misrepresentation” resulted in nothing more than giving Noble House a cause of action to rescind the sale, which Noble House never asserted. Upon Houston’s death, ownership was vested in his estate, thus curing the relative nullity and conveying after-acquired title.
Roos responds that the Noble House assignment, and the later assignments, were absolutely null and could not be cured. In support, he cites the doctrine of “trust indestructibility,” Albritton v. Albritton, supra, and McLendon v. First Nat’l Bank of Shreveport, 299 So.2d 407 (La.App. 2 Cir.1974), and argues that the Noble House assignment simply violated the core concept of the trust, namely, the beneficiary cannot alienate trust property. We agree.
Louisiana has a strong public policy in effectuating and protecting the settlor’s intent as set forth in the trust document. Id.; Richards v. Richards, 408 So.2d 1209 (La.1981). In Albritton v. Albritton, supra, the court expressly rejected the notion that even in the absence of vices of consent, the beneficiary could enter into an agreement affecting the trust. The court stated:
This cannot be so. The trust would hardly be a stable device for the transmission of property if the beneficiaries and trustees could make agreements that could modify the settlor’s fundamental intent in setting up the trust.
The court further found that such modifications were contrary to the rules of order for trusts, La. R.S. 9:2021 and 9:2025:
17§ 2021. General rule; modification The settlor may modify the terms of the trust after its creation only to the extent he expressly reserves the right to do so.
§ 2025. Delegation of right to terminate or to modify administrative provisions
A settlor may delegate to another person the right to terminate a trust, or to modify the administrative provisions of a trust, but the right to modify other provisions of a trust may not be delegated.
Under the scheme of the trust code, even the settlor has no power to modify the trust he has created unless he expressly reserves the power to do so. The consent of all the settlors, beneficiaries and trustees is not effective to make any disposition in trust unless the trust instrument so provides. Id. at 1332, citing Oppenheim & Ingram, 11 La. Civ. L. Treatise—Trusts, § 294 (1977). The Albritton court held that the notion of trust indestructibility is “inherent in our Louisiana trust law,” and announced an imperative rule of public order. “Any violation of these rules is an absolute nullity.” Id.; Badon’s Employment Inc. v. Smith, 359 So.2d 1284 (La.1978); E.L. Burns Co. v. Cashio, 302 So.2d 297 (La.1974).
We recognize that the Noble House assignment is not quite the same as destroying the trust; however, the “extension of trust” in Albritton, supra, was intended only to prolong the trust, and yet the supreme court rejected it under the principle of trust indestructibility. In both cases, the fundamental concept is to honor the settlor’s intent, regardless of the later *1022 intent of the trastee or a beneficiary. Houston designated this as an irrevocable trust. His intent, clearly stated in the trust instrument, was to “protect[] the properties and assets transferred to the trust.” The Noble House assignment thwarted f «this intent, thus violating an imperative rale of public order. Like the extension of trust in Albritton, supra, the Noble House assignment is an absolute nullity. The district court’s finding to this effect is legally correct.
With this conclusion, we pretermit any consideration of the doctrine of after-acquired title. A contract that is absolutely null may not be confirmed. La. C.C. art. 2030; Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888. These assignments of error lack merit.

Validity of Self-Settled Trust

By their fifth assignment of error, Olsen and Ms. Williams urge the court erred in finding that the trust created by Houston, for Houston as sole beneficiary, was entitled to spendthrift protection. They contend that Houston cannot “hide behind” his trust, even if it is a spendthrift trust. They concede that Louisiana law allows spendthrift trusts, La. R.S. 9:2002, “to guard against the improvidence of the beneficiary and to preserve the income for his support, in such manner that he cannot dispose of it nor can it be taken by his creditors,” 5-44 Page on Wills, § 44.31 (©2013). They contend, however, that a trust cannot be considered spendthrift “to the extent of the trust property donated to the trust by the beneficiary,” R.S. 9:2004, comment (c). This is called a “self-settled trust,” and a “settlor cannot create a spendthrift trust for his own benefit,” Kurzweg v. Marple, 841 F.2d 635 (5 Cir.1988).[3] Otherwise, they argue, crafty debt-ridden settlors could merely create trusts and thus shield their assets from creditors. Finally, appellants reiterate that when a beneficiary, whether or not of a |flspendthrift trust, tries to sell his interest in the corpus, it is merely a relative nullity.
Roos responds that R.S. 9:2004 and Kurzweg prohibit a debtor from creating a self-settled spendthrift trust to defraud his creditors, but nothing prohibits a person from placing assets in a spendthrift trust to prevent himself from unintentionally (or intentionally) alienating his property contrary to his best interest, Page on Wills, supra[4] He also shows that the court applied the spendthrift provisions to a self-settled trust in In re Guidry Trust, 97-1210 (La.App. 3 Cir. 5/6/98), 713 So.2d 631.
The trust code expressly authorizes the spendthrift trust:
§ 2002. Restraint upon alienation
The trust instrument may provide that the interest of a beneficiary shall not be subject to voluntary or involuntary alienation by a beneficiary. A restraint upon voluntary alienation by a beneficiary is valid. But a restraint upon involuntary alienation by a beneficiary is subject to the limitations prescribed by this sub-part.
*1023 The applicable restraint upon involuntary alienation is provided two sections later:
2004. Seizure by creditor; general rule
A creditor may seize only:
(1) An interest in income or principal that is subject to voluntary alienation by a beneficiary.
(2) A beneficiary’s interest in income and principal, to the extent that the beneficiary has donated the property to the trust, directly or indirectly. A beneficiary will not be deemed to have donated property to a trust merely because he fails to 1 mexercise a right of withdrawal from the trust.
Comment (c) states that a settlor cannot create a spendthrift trust for his own benefit, citing Restatement of Trusts 2d, § 156 (1959). We recognize the common law principle expressed in the Restatement; however, it broadly applies “where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest” (emphasis added). By contrast, La. R.S. 9:2002 states that a restraint upon voluntary alienation is valid, and only restraints upon involuntary alienation are subject to limitations such as stated in R.S. 9:2004. The Noble House assignment was obviously a voluntary alienation of the trust corpus; as such, it is valid under R.S. 9:2002, and not subject to seizure by a creditor under R.S. 9:2004.[5]
This conclusion is fortified by certain extrinsic evidence pervading the record. The trust instrument designated Ms. Williams as trustee; the summary judgment evidence shows that she contacted Olsen who, at her suggestion and through his company, Noble House, obtained the Noble House assignment from Houston, and later split the Tenneco lease with Ms. Williams. The trust code expressly states:
§ 2085. Sale by trustee to himself
A. * * * An individual trustee shall not directly or indirectly buy or sell property for the trust from or to himself or his relative, employer, employee, partner, or other business associate, unless the trust instrument provides otherwise, or unless specifically authorized by a court of competent jurisdiction, after a contradictory hearing.
[[Image here]]
Ms. Williams’s scheme to purchase this valuable asset[6] would appear to be prohibited by R.S. 9:2085 A. This is simply not the type of situation depicted by the appellants: Houston did not put his assets in a spendthrift, trust to defraud his creditors, but rather to protect the assets from his own imprudence. On this record, the provisions of the trust code and of this trust instrument are much better served by honoring the restraint upon alienation authorized by R.S. 9:2002. The district court’s findings to this effect are not plainly wrong, and this assignment of error lacks merit.

Exceptions of No Right and No Cause of Action

By their two remaining assignments of error, Olsen and Ms. Williams contest the district court’s denial of their exceptions of no right and no cause of *1024 action. They show that a relative nullity may be invoked “only by those persons for whose interest the ground for nullity was established,” La. C.C. art.2031, and in the case of the sale of a thing belonging to another, “nullity is in the interest of the purchaser,” Frey v. Amoco Prod. Co., 603 So.2d 166 (La.1992). They contend that the seller, whether it be Houston, the trust or the estate, simply has no right of action to rescind a relatively null sale. They further show that every sale of real property implies a warranty of peaceful possession, La. C.C. art. 2475, even a sale by after-acquired title, La. C.C. arts. 872, 936. Claiming that the estate regained title free of trust, the appellants argue that the executor cannot now claim title adverse to the decedent’s buyer, Gary v. Bullock, 206 La. 231, 19 So.2d 120 (1944); 12Cattle Farms Inc. v. Abercrombie, 211 So.2d 354 (La.App. 4 Cir.1968), and thus Roos has no cause of action.
Roos responds that as the dative independent executor of Houston’s succession, he stands in the position of Houston, both as seller and trust beneficiary, and thus had both a right and cause of action.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative. La. C.C. art.2030; Albritton v. Albritton, supra; Skannal v. Jones Odom Davis & Politz LLP, 48,016 (La.App. 2 Cir. 9/25/13), 124 So.3d 500. For the reasons already discussed, the district court correctly found that the Noble House assignment was an absolute nullity. Roos obviously had a private right and cause of action to assert absolute nullity. La. C.C. art.2030; Total Benefit Servs. v. City of New Orleans, 2002-0697 (La.App. 4 Cir. 4/11/02), 819 So.2d 1067, writs denied, 2002-1039 (La.4/16/02), 813 So.2d 413, 2002-1238 (La.5/8/02), 815 So.2d 828. These assignments of error lack merit.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellants, George A. Olsen Jr. and Hanh T. Williams.
AFFIRMED.

. The heading to Article 3 actually says, “Revocable Trust ” (all headings are underlined in the original), but the text begins, "This trust is irrevocable and may not be revoked * *

. The court granted other exceptions, with the result that Roos amended his pleadings to restate Olsen’s and Ms. Williams’s domiciles. These rulings are not appealed.

. They also cite the unpublished opinion of In re Succession of LeBeau, 2010-2317 (La.App. 1 Cir. 1/12/12), 2012 WL 113076.

. This text deals with testamentary trusts and thus is not directly applicable to the instant inter vivos trust. It recognizes, however, "the great weight of American authority * * * that if testator expresses his intention in apt and suitable language, it is possible to create such an estate in equity as to exclude the creditors of the beneficiary from reaching such estate and subjecting it to their claims.” Such an estate is intended to guard "against the improvidence of the beneficiary and to preserve the income for his support, in such manner that he cannot dispose of it nor can it be taken by his creditors.” Id. (emphasis supplied).

. The court reached essentially this conclusion in In re Guidry Trust, supra, without explicitly citing R.S. 9:2002 and 2004; the dissenting judge in In re Succession of Le-Beau, supra, also recognized, "A spendthrift trust is created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity.”

. Notably, Ms. Williams did not advise Olsen to offer to buy the Webster Parish lease, from which her trustee's compensation was drawn.