PARRO, J.
The defendants have appealed a judgment, which, among other things, ordered the termination of two family trusts. For the reasons that follow, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On July 11, 1996, Douglas Lamar Cock-erham, Sr. (Lamar) and Ruth C. Cocker-ham (Ruth) established a family trust known as the Cockerham Revocable Trust (revocable trust or first trust). The act creating the trust provided that Lamar and Ruth would be the trustees and beneficiaries of the revocable trust and that, in the event of the death of either one of them, the survivor would become the sole remaining trustee and beneficiary. One of their sons, Douglas L. Cockerham, Jr. (Douglas), was named the successor trustee of the revocable trust. In addition, the act creating the revocable trust'named Lar mar and Ruth’s sons, Douglas, Maurice Nelson Cockerham (Maurice),[2] and Henry James Cockerham (Henry), the successor income and principal beneficiaries.
Lamar died intestate on September 15, 1997. As the. surviving spouse, Ruth became the sole trustee and beneficiary of the first trust in accordance with the provisions of the revocable trust. Thereafter, in March .1999, Ruth signed a declaration of trust split, in which she created a second trust named the Cockerham Irrevocable Family Trust .(irrevocable trust or second trust). Into this second trust, Ruth transferred certain listed immovables from the revocable trust, while leaving the remaining assets in the first trust., The one-page document creating this irrevocable trust does not establish any further provisions for the management of the trust or for how its assets would be distributed upon its termination.
In July 2008, Ruth amended the revocable trust to remove Douglas as [athe sole successor trustee and to name all three of her sons as joint successor trustees in the event she died or became incapacitated. In addition, Ruth required that the decisions of the joint successor trustees be unanimous. In the event that the successor trustees could not agree, Ruth designated her granddaughter, Lisa Arline Cockerham (Lisa),[3] as arbitrator to arbitrate a decision that would be binding on the joint trustees.
*256 On January 22, 2009, Douglas, Maurice, and Henry executed a document removing Ruth as trustee of the first trust and installing themselves as joint trustees in her place, because she had become incapacitated. Ruth died one week later on January 29, 2009.
After Ruth’s death, Maurice and Henry sought to have their shares of the assets from the revocable trust distributed to them in accordance with Sections 3.2 and 6.1 of the trust.[4] However, Douglas refused to distribute the assets as requested; therefore, Maurice and Henry filed the underlying lawsuit, seeking to terminate the revocable trust and distribute the trust property. Plaintiffs further sought to have Douglas render an accounting of his activities in handling the assets of the revocable trust and to recover the attorney fees and costs they had paid to have the trust provisions enforced. In addition, Maurice and Henry sought to evict Lisa from the family home, belonging to the trust, in which she had been living without the consent of the trustees and without paying rent.[5]
After the original petition was filed, Maurice died. The plaintiffs then amended their petition to substitute Juanita Cocker-ham (Nita), Maurice’s wife, as a party plaintiff, in her capacity as the representative of Maurice’s estate. The plaintiffs further amended their petition to add a claim to remove Lisa as the arbitrator of the trust, because she allegedly was not impartial toward the | .¡plaintiffs. Plaintiffs also added a claim against Lisa, contending that she had taken possession of, and converted, various items of property belonging to the revocable trust.
The plaintiffs subsequently amended them petition a second time upon learning of the existence of the irrevocable trust. According to the allegations of this amended petition, because the second trust did not name a trustee or beneficiary of that trust, Ruth, as settlor of the trust, was its sole trustee and beneficiary. The plaintiffs further alleged that the irrevocable trust terminated by operation of law upon Ruth’s death and that the assets of the trust reverted to Ruth’s estate to be probated in accordance with Louisiana law.[6] Douglas filed a reconventional demand, seeking to recover all costs, fees, and expenses he had allegedly incurred in defending the trust against the plaintiffs. In addition, Douglas contended that certain property had been removed from the revocable trust by the plaintiffs that should be accounted for and distributed according to the trust.
After a trial at which all parties appeared, except Lisa, the trial court rendered judgment terminating the revocable trust and ordering the assets of that trust distributed to Douglas, Henry, and Nita, as the representative of Maurice’s estate, in equal shares. The judgment further terminated the irrevocable trust and ordered that the assets of the trust were deemed to be assets of Ruth’s estate, which were to devolve to her heirs according to the laws of probate. Because the trusts were terminated, the trial court determined that the plaintiffs’ claim to have Lisa removed as arbitrator was rendered moot. In addition, *257 the judgment ordered each of the trustees, plus Nita, as the representative of Maurice’s estate, to render a written accounting of all activities performed by each of them as trustee of either or both of the trusts. | ¿Finally, judgment was rendered in favor of the plaintiffs and against the trusts in the amount of 19, 964.48 $ as reimbursement for attorney fees and costs incurred by the plaintiffs in this matter. All other claims by the parties were dismissed. Douglas and Lisa have appealed.
DISCUSSION
In their first assignment of error, Douglas and Lisa contend that the trial court erred in terminating the trusts. Appellants further contend that Maurice and Henry did not have the authority to file suit against Douglas to judicially dissolve the trusts. Specifically, appellants argue that, because Ruth .had appointed Lisa as the arbitrator to arbitrate any disputes between the trustees, the trustees were not authorized to file suit to resolve disputes or dissolve the trusts.
Authority to File Suit
A trustee shall exercise only those powers conferred upon him by the provisions of the trust instrument. LSA-R.S. 9:2111. A trustee shall further exercise only those powers necessary or appropriate to carry out the purposes of the trust and those that are not forbidden by the provisions of the trust instrument. See LSA-R.S. 9:2111. We note that the trust documents do not prohibit the filing *of suit by one trustee against another. We further note that, as co-trustees, Maurice and Henry had an obligation to ensure that the trusts and their assets were properly administered. Indeed, Article IX, paragraph 9.1M of the revocable trust, authorizes the trustee to employ managers, supervisors, accountants, appraisers, or attorneys should the trustee consider any of their services necessary to properly administer -the trust. Finally, LSA-R.S. 9:1784 provides that a trustee who accepts a .trust established pursuant to Louisiana law submits to the jurisdiction of Louisiana courts. Thus, a co-trustee’s alleged mishandling of a trust’s assets, or mismanagement of the trust, are clearly acts of trust administration that can be resolved by a lawsuit.
JfiTermination of the Revocable Trust and Distribution of Assets
The judgment at issue decreed that thé revocable trust was deemed terminated and ordered that the trust’s assets were to be distributed, in equal shares, to Nita, as the representative of Maurice’s estate, Henry, and Douglas. Appellants contend that this ruling by the trial court is in opposition to the settlors’ intent in establishing the trust, as well as the doctrine of indestructibility of trusts established in Louisiana law. The Louisiana Supreme Court discussed the doctrine' of trust indestructibility in Albritton v. Albritton, 600 So.2d 1328, 1331-32 (La. 1992), as follows:
Thus, under the’ scheme of the trust code, even the settlor has no power to modify the trust he has created unless he expressly reserves the power to do so. More importantly for our purposes, the trust code prohibits the delegation of the power to modify provisions of the trust- other than the administrative provisions. Oppenheim & Ingram, 11 Louisiana Civil Law Treatise-Trusts § 294 (1977). Likewise, LSA-R.S. 9:2028 sets forth a concept of trust indestructibility:
The consent of all settlors, trustees and beneficiaries shall not be effective to terminate the trust or any disposition in trust, unless the trust instrument provides otherwise.
*258 We have held this concept of trust indestructibility is “inherent in our Louisiana ti'ust law.” [Richards v. Richards, 408 So.2d 1209, 1210 [ (La. 1981) ].] Taken as a whole, we believe these rules set forth a public policy of protecting the trust instrument from any modification or termination contrary to the settlor’s clearly expressed intent. These are imperative rules of public order, and any violation of these rules is an absolute nullity. See Badon’s Employment, Inc. v. Smith, 359 So.2d 1284 (La. 1978); E.L. Burns Co. v. Cashio, 302 So.2d 297 (La. 1974).
A review of the revocable trust instrument reveals the following provisions:
3.1 Unless terminated or revoked in accordance with the express provisions herein, this trust shall terminate on the death of the last surviving Beneficiary and the completion of the distributions set forth in paragraph 3.2.
3.2 Upon the death of the last surviving Beneficiary, the Successor Trustee shall distribute the trust properties to the Successor Income and Principal Beneficiaries as follows:
(a) thirty-three and one-third (33 1/3%) per cent of all properties and assets then held in trust shall be distributed to Douglas Lamar Cockerham, Jr.
(b) thirty-three and one-third (33 1/3%) per cent of all properties and assets then held in trust shall be distributed to Maurice Nelson Cockerham.
(c) thirty-three and one-third (33 1/3%) per cent of all properties and assets then held in trust shall be.distributed to Henry James Cockerham.
■ 3.3 For purposes of the distributions to be made, in accordance with this Article III, the Successor Trustee shall have the option to hold the properties in trust or to sell all properties held in trust for them fair market values, and thereafter, distribute the cash proceeds to satisfy the distribution set forth in paragraph 3.2to his or her heirs above.
3.4 If one of the Successor Income and Principal Beneficiaries] should die before the trust assets have vested in him, then the Trustee will distribute the deceased Successor beneficiary’s interest as stated in Paragraph 3.2 to his heir who would have taken their estate and in such shares as said heirs would have taken it, had the Successor Beneficiary died unmarried and without a valid last will and testament.
■ Pursuant to the above provisions, the revocable trust was to terminate, and its assets were to be distributed to the successor income and principal beneficiaries, upon the death of the last surviving beneficiary.[7] Thus, under the facts of this case, the trust provided that, upon Ruth’s death, the trust terminated and the successor trustees were required to distribute the trust properties to Douglas, Maurice, and Henry in equal portions.
Douglas contends that paragraph 3.3 gives him and the other successor trustees the authority to hold on to the trust property, without distributing it, even after the death of the last surviving beneficiary, in order to maximize the value of the property prior to distribution. However, a reading of that provision in conjunction with paragraphs 3.1 and 3.2 does not support that conclusion.
As noted above, paragraphs 3.1 and 3.2 provide for the termination of the revocable trust and the distribution of its assets upon the death of the last | ./Surviving bene- *259 flciary. Specifically, those paragraphs note that the trust shall terminate and' the assets shall be distributed upon the death of the last surviving beneficiary. For purposes of making the distributions required by the previous paragraphs, paragraph 3.3 authorizes the successor trustees to either hold on to the trust assets or sell thern for their fair market values and distribute the cash proceeds to the proper parties. When read together, these provisions require the trust to terminate upon the death of the last surviving beneficiary. The assets must then be distributed, which may be accomplished either by holding the actual assets held in trust or by selling those assets for their fair market value and distributing the cash proceeds of the sale. Accordingly, we find no error in the trial court’s finding that the revocable trust had terminated.
Termination of Irrevocable Trust and Distribution of Assets
The judgment at issue also decreed that the irrevocable trust had terminated and that the assets of the trust were deemed to be assets of Ruth’s estate. The judgment further ordered that the assets would devolve to her heirs according to the laws of probate. Again, appellants contend that this ruling is in error.
When Ruth created the second trust, she did not establish any provisions for its management, nor did she specify a trustee or beneficiary.[8] The appellants argue that the trust provisions of the revocable trust would therefore control. However, they cite no authority for this proposition,
Louisiana Revised Statute 9:2013 provides:
If the trust instrument fails effectively to designate a principal beneficiary át the time when the principal beneficiary is to be determined, the settlor shall be •the principal beneficiary, and upon his death his interest shall vest in his heirs or legatees. Likewise, if at any time no provisional principal beneficiary is identifiable under the terms of the trust instrument, the settlor shall be the provisional principal beneficiary.
^Furthermore, if the trust instrument stipulates no term, the trust shall terminate upon the death of the last income beneficiary who is a natural person. LSA-R.S. 9:1833.
In this case, Ruth was the sole trustee and the sole beneficiary of the irrevocable trust. Therefore, upon her death, the irrevocable trust terminated by operation of law, and the assets of that trust returned to her estate. Furthermore, because Ruth died without a will, the assets of the irrevocable trust passed to her heirs in accordance with the laws of intestate successions. Accordingly, we find no error in this finding by the trial court.
Attorney Fees and Costs
In their second assignment of error, appellants contend that the trial court erred as a matter of law in denying Douglas’s claim for reimbursement of attorney fees in defending the trusts in this matter. In addition, in their third assignment of error, appellants assert that the trial court erred as a matter of law in awarding attorney fees and costs to the plaintiffs/appellees in this matter^
A trustee is entitled to indemnity from the trust estate for expenses properly incurred by him in the administration of the trust, unless the trust instrument provides otherwise. LSA-R.S. 9:2191. A trustee may incur expenses necessary to carry out the'purposes of the trust and not forbid *260 den’ by the provisions of the trust instrument, and other expenses authorized by the provisions of the trust instrument. LSA-R.S. 9:2117.
Appellants argue that the trial court erred in denying Douglas’s claim for reimbursement of attorney fees and travel expenses that he allegedly incurred in the administration of the trust. At trial, Douglas testified that he had paid all of the attorney fees himself, without any assistance from Lisa, despite the fact that the same attorney that was representing him was also representing her in this matter. Douglas asserts that he is entitled to reimbursement from the |9trusts for his attorney fees, and expenses, because he incurred them attempting to defend .the trust. However, Henry and Nita contend that, in fact, Douglas’s actions were in contravention of the purposes of the trust and that they were required to bring their action in order to carry out the true purposes of the trust.
Douglas testified at trial that he wanted to follow the written “letter of the trust” so that they could get the maximum benefit for all of the beneficiaries. Howeyer, a review of the record demonstrates that Douglas had not been complying with the provisions of the trusts. Although the first trust had been amended to name all three sons as joint successor trustees, Douglas took many actions concerning the trust property on his own and without consulting the other trustees. Specifically, he allowed Lisa to continue to live rent-free on the trust property without the joint trustees’ consent.[9] In addition, he liquidated certain annuities owned by the trust without his brothers’ consent or prior knowledge. Furthermore, he used trust funds to renovate trust property and then hired a realtor to rent the property to third parties. Again, these actions were taken without the knowledge or consent of his joint trustees and without consultation with them.
As noted previously, paragraph 9.1M of the first trust provides the trustee with the authority to hire an attorney, if necessary, to ensure that the trust is properly administered. However, in this case, Douglas was required to hire an attorney to defend himself because of the actions he had taken in using the assets of the trusts without the knowledge or consent of the joint trustees. In addition, Douglas’s attorney also represented Lisa, who is not a trustee, in the same action. There is no provision, either in the trust instrument or in the law, which allows Lisa to be indemnified for her expenses in this matter.
| ¶ (Nevertheless, no testimony or documentary evidence was presented at the trial to demonstrate the amount of attorney fees attributable to Douglas for issues involving alleged trust defense issues and the amount attributable to Lisa for, issues connected to the claim of conversion levied against her or for efforts to evict her or remove her as arbitrator.
On the other hand, the plaintiffs were required to file the underlying suit, at great expense to themselves, in order to prevent Douglas from continuing to deplete the trusts’ assets. Therefore, after a thorough review of the record, we find that there was a reasonable factual basis for the trial court’s apparent finding that Douglas had not properly incurred his expenses in furtherance of the administration of the trust and for the trial court’s finding that the plaintiffs were required to expend *261 their attorney fees in order to resolve the issues of the trust. We further find that these factual findings are not clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Accordingly, we find that these assignments of error are without merit.
Trustee of the Irrevocable Trust
In their fourth assignment of error, appellants contend that the trial court erred in denying Douglas’s claim that he be appointed the sole trustee of the irrevocable trust. In the alternative, Douglas asserts that he and his brothers should have been recognized as joint trustees of the irrevocable trust.
Douglas based this argument on his earlier contention that the irrevocable trust was managed by the same terms that controlled the revocable trust. According to Douglas, because he had been named the sole successor trustee of the first trust, Ruth had intended that he be the sole successor trustee of the second trust. As noted previously, however, there is no evidence to support this argument, and nothing in the trust documents suggests that Ruth ever adopted the provisions of the first trust in establishing the second trust. Therefore, this assignment of error is without merit.
juTransfer of Cockerham Family Property to the Trusts
In their fifth assignment of error, appellants argue that the trial court erred in finding that the Cockerham family property was not transferred in its entirety to the two trusts based on the Livingston Parish public records. As a preliminary matter, we note that the property at issue is referred to at certain times in the record as consisting of approximately ninety acres and at other times as consisting of approximately twenty-seven acres. Apparently, the property initially was much larger, and parts of it were sold off over time. Nevertheless, despite the substantial difference in size, it is the same property.
When Ruth and Lamar created the revocable trust In 1996, they placed several pieces of immovable property in the trust, including their family home located in Denham Springs, Louisiana. However, instead of placing their entire interest in the home in the trust, Schedule A to the revocable trust, which listed the property included in the trust, provided the following description:
1. Settlor’s [sic] interest in and to their family home located at 1138 Cockerham Road, Denham Springs, Louisiana 70726, and more particularly described as follows:
AN UNDIVIDED ONE-HALF INTEREST IN AND TO THE FOLLOWING DESCRIBED PROPERTY:
(A) Ninety (90)or more acres of land, located in Sec. 29 and 48, T6S, R3E of Livingston Parish and more full[y] described as being bounded on the. North by lands of John Miller and A.C. Barnett, Jr., South by A.M. Cockerham, East by J.L. Benton and West by A.M. Cockerham and being the same property acquired by E.O. Benton from John Ellis.
Being the same property acquired by D.L. Cockerham from E.O. Benton by act dated May 17, 1946 before Paul Tulane Jones, Notary Public recorded as Entry 42556 of the records of Livingston Parish.
Clearly, by that description, Ruth and Lamar only transferred an undivided one-half interest in the family home to the revocable trust.
Appellants contend that this description was made in error, but that it was subsequently corrected by a notarial act of correction signed by Douglas |12Sunseri, the *262 notary public before whom Lamar and Ruth had appeared to sign the act creating the revocable trust. According to this notarial act of correction, Schedule A to the revocable trust was corrected to “clarify” that all of Lamar and Ruth’s interest in the family home was to have been transferred to the revocable trust. Appellants argue that this notarial act of correction, which was subsequently recorded in the public records of Livingston Parish, was sufficient to put the plaintiffs on notice that the entire family home was in trust.[10] This argument is without merit.
Lamar died intestate on September 15, 1997. At that time, the property description in Schedule A of the revocable trust provided that only an undivided one-half interest in the family home had been transferred to that trust. The notarial act of correction concerning the property description of the family home was not executed until February 23, 1999, approximately seventeen months after Lamar’s death. However, immediately- upon Lamar’s death, his sons had acquired ownership of his estate, including his undivided one-half interest in the undivided one-half interest in the family home that had not been transferred to the revocable trust. See LSA-C.C. arts. 888, 934, and 935. Therefore, the notarial act of correction was ineffective to divest Maurice and Henry of the ownership of the property, which they had acquired immediately upon the death of their father seventeen months earlier.[11]
Moreover, LSA-R.S. 35:2.1 governs notarial acts of corrections and, at the time the notarial act of correction at issue in this matter was-exécuted, the statute provided, in pertinent part:
A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction [^executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.'
B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the-parties.
Pursuant to the clear terms of the statute, notarial acts of correction may be used only for clerical errors, not substantive errors such- as the one in this case where the settlors transferred only an undivided one-half interest in the family home to the trust. Accordingly, we find no error in the trial court’s finding that the Cockerham family property was not transferred in its entirety to the revocable trust.
*263 Removal of Lisa Arline Cockerham as Arbitrator
In their final assignment of error, appellants contend that the trial court erred as a matter of law in not finding that Lisa had been duly appointed as the arbitrator of the revocable trust and that she should not have been removed. The trial court found that the issue of Lisa’s removal was moot, because it had determined that the trusts were terminated and that there was no need for Lisa to remain as arbitrator for trusts that no longer existed. Because we agree with the trial court’s findings regarding the termination of the trusts, we also find that the issue of Lisa’s removal as arbitrator is moot. Accordingly, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Douglas L. Cockerham, Jr. and Lisa Arline Cocker-ham.
AFFIRMED.
Kline, J., concurs.

. Throughout the record, Maurice Nelson Cockerham is referred to alternately as Maurice or Nelson, For simplicity, we will refer to him as Maurice throughout this opinion.

.bisa is Douglas's daughter.

. At that time, Maurice and Henry were apparently unaware of the existence of the second trust.

. On May 18, 2009, the parties entered into a stipulated judgment consenting to Lisa’s eviction from the family home by May 22, 2009.

.The plaintiffs also amended the petition a third time to allow Maurice’s two surviving daughters, Tara Cockerham Rittenhouse and Courtney Cockerham, to intervene as parties plaintiffs in the event the court were to determine that they were entitled to receive their father's share of the trust assets.

. As noted previously, pursuant to the revocable trust, Ruth and Lamar were the only beneficiaries. Upon the death of either of them, the survivor became the sole remaining beneficiary-

. In signing the declaration of trust split, Ruth signed the document, listing herself as the trustee on the signature line.

. It is true that Ruth had granted Lisa a usufruct over this property in an amendment to the trust dated August 21, 2008. However, the usufruct had certain conditions that Lisa had to meet in order to continue living in the home. It is not disputed that those conditions were no longer being met.

. On March IS, 1999, Ruth signed the declaration of trust split, creating the irrevocable trust. In that same document, she transferred the family home from the revocable trust to the irrevocable trust.

. After both Ruth and Lamar died, Maurice and Henry opened a succession proceeding concerning the estates of both of their parents. On February 22, 2012, the trial court in that succession proceeding signed a judgment recognizing that the estates of Ruth and Lamar jointly contained an undivided one-half interest in the family home property.