**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0522

IN THE MATTER OF
THE SUCCESSION OF JESSE R. COLEMAN, SR.

\* \* \* \* \*

'JUN 0 3 2020

On appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. 98,231

The Honorable Janice G. Clark, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| John B. Brumfield, Jr.<br>Baton Rouge, Louisiana | Counsel for Appellant,<br>Frances C. Dake |
| Mark D. Miley<br>Baton Rouge, Louisiana | Counsel for Appellee,<br>Christine D. Coleman, Independent<br>Executrix of the Succession of<br>Jesse R. Coleman, Sr. |

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY AND BURRIS,[1] JJ.

---

[1]    Judge William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

This is an appeal of a judgment of possession challenging the trial court's findings regarding ownership of property. We amend and, as amended, affirm.

## FACTS

Jesse Coleman, Sr., died testate in 2014. His wife, Lillie E. Coleman, predeceased him. In his will, Jesse bequeathed all of his property to two of his children, Barbara Coleman Steele and Christine D. Coleman, specifically excluding his other two children, Jesse R. Coleman, Jr., and Frances C. Dake. Christine filed a petition to probate the will and was confirmed as independent executrix of the succession. Frances then filed a motion seeking an accounting of the property comprising Jesse's estate and the trusts created by the Jesse R. Coleman, Sr., and Lillie E. Coleman Revocable Living Trust Agreement (the agreement).

The agreement, executed by Jesse and Lillie during their marriage, created four trusts, each benefitting one of their four children. Jesse and Lillie donated property to the trusts collectively, including four pieces of immovable community property, with the trust agreement providing each trust would contain an undivided one-fourth interest in all donated property. Under the terms of the agreement, the trusts were revocable by Jesse and Lillie until either died, and upon death became irrevocable as to the deceased's share of community property and the deceased's separate property held in the trusts. Additionally, upon either Jesse or Lillie's death, the surviving settlor became the sole trustee.

Lillie did not revoke the trusts during her lifetime. After Lillie's death, Jesse amended and revoked the trust agreement, then demanded return of all property he owned. Jesse donated to Christine his ownership interest in three pieces of the immovable property that he and Lillie had previously donated to the trusts. The attorney who prepared and notarized the act of donation from Jesse to Christine later

2

prepared an act of correction, purporting to correct the donation to convey full ownership of the property to Christine.

In her motion for accounting, Frances represented that she was the designated successor trustee and became executrix of Lillie's estate following Jesse's death. Christine challenged Frances's right of action, which led to a consent judgment providing Frances would assert any necessary claims on behalf of Lillie's succession. Frances then filed two proofs of claims against Jesse's succession, asserting claims by Lillie's estate in the amount of one-half the value of itemized community movables and immovables, including the immovable property that was the subject of Jesse's donation to Christine, one-half the amount of cash advanced and withdrawn from community accounts, and one-half the amount on deposit in a joint account by the trust. Frances acknowledged Jesse was within his right to revoke the portion of the trust agreement that remained revocable after Lillie's death, but asserted he had no authority to donate the entirety of trust property as was purportedly done through the corrected act of donation. She further argued Jesse's actions in managing the trusts, and particularly in donating trust property to Christine, constituted a breach of his fiduciary duty to the respective trust beneficiaries. She asserted the remedy was to assert a claim as a creditor against the succession, which she accomplished through the proofs of claims.

The litigation culminated with a bench trial, after which the trial court rendered a judgment that declared Christine the sole owner of immovable property pursuant to the acts of donation and correction, and, in accordance with Jesse's will, sent the legatees into possession of what was determined to be Jesse's property. Frances now appeals.

## DISCUSSION

Frances contends the trial court erred in finding the act of correction was valid and in deciding Christine was the sole owner of the property subject to the acts of

3

donation and correction. Christine maintains the trial court was correct because Jesse amended and revoked the trust, then demanded return of all trust property, so he owned the property in full when he executed the act of donation. She explains the act of correction was unnecessary and merely executed at the request of a title company.

In construing a trust, the settlors' (creators') intention controls and is to be ascertained and given effect, unless opposed to law or public policy. *See* La. R.S. 9:1761 and 1753; *Richards v. Richards*, 408 So. 2d 1209, 1211 (La. 1981). Louisiana has a strong public policy in favor of effectuating and protecting the settlor's intent as set forth in the trust instrument. *Albritton v. Albritton*, 600 So. 2d 1328, 1331 (La. 1992); *In re Breazeale*, 16-1003, 2017WL3573991, *3 (La. App. 1 Cir. 8/18/17), *writ denied*, 17-1566 (La. 11/17/17), 230 So. 3d 218. The concept of trust indestructibility is inherent in Louisiana trust law, which provides that only the settlor has the power to modify the trust he created, and then only if he expressly reserves the power to do so. *See* La. R.S. 9:2021; *Albritton*, 600 So. 3d at 1332. Parol or extrinsic evidence may be admitted to aid in construing the trust instrument only if the instrument is ambiguous and uncertain and only to explain, not contradict the instrument. *In re Mashburn Marital Trust*, 06-1753, 06-1754, 2006WL3804633, *2 (La. App. 1 Cir. 12/28/06); *In re James C. Atkinson Clifford Trust*, 00-0253 (La. App. 1 Cir. 6/23/00), 762 So. 2d 775, 776, *writ denied*, 00-2262 (La. 10/27/00), 772 So. 2d 655.

The trust instrument pertinently provides:

> 1.7 <u>Character of Property Transferred Unchanged with Respect to Settlor</u>. The separate or community status of the property originally transferred to this trust by Settlors which comprises the original principal of the trust is designated on the transfer agreement attached hereto. During the joint lives of the Settlors, any property transferred to this trust shall retain its original character and status as community or separate property; and, in the event of revocation, the Trustee shall distribute such property to the Settlors based on the same property rights they had prior to transfer to the trust. Any and all gifts

4

made by the Settlors of trust assets shall constitute a revocation by the Settlors as to such property and, therefore, a gift by any Settlor having an interest in that property would also constitute a revocation as to such property.

\* \* \* \* \*

1.9 Revocability. These trusts shall be revocable by written notice to the Trustee. Either of the Settlors, during their joint lives, may, at any time and upon successive occasions, revoke these trusts in whole or in part. The Settlors may jointly alter, modify, change or amend any of its provisions by written notice. Any amendment may be similarly canceled or amended.

If the trusts are not previously revoked, then upon the death of either Settlor, the trusts shall become irrevocable as to that Settlor's share of the community property held in trust and as to any of that Settlor's separate property held in trust. The share of the community property held in trust belonging to the surviving spouse, along with any separate property belonging to the surviving spouse, shall continue to be held in trust (the "Surviving Spouse's Trust"), but the surviving spouse, acting alone, shall have the right to revoke, alter, modify, or amend the Surviving Spouse's Trust at any time by delivering written notice of revocation or amendment to the Trustee; provided however, that the duties and liabilities of the Trustee cannot be increased without its consent. The Surviving Spouse's Trust shall be irrevocable upon the death of the surviving spouse.

The settlors expressly reserved their rights to revoke the trust during their joint lifetimes. There is no dispute that neither Jesse nor Lillie revoked the trust prior to Lillie's death in November 2006; therefore, upon her death, the trust became irrevocable as to her share of property held in trust.

The trust instrument provided that upon the death of one settlor, the other would act as sole trustee. The trust instrument granted the trustee various discretionary administrative powers, including the right to dispose of trust property. Christine argues that as trustee, Jesse had the authority to make substantive changes to the trust and even revoke it, specifically relying on the following provisions of the trust instrument:

4.6 Sale, Encumbrance or Other Disposition. The Trustee may sell, exchange, redeem, mortgage, pledge, lease (as lessor), abandon, or otherwise dispose of any productive or unproductive property, whether movable or immovable, tangible or intangible, received on the creation of the trust estate, at public sale, private sale,

5

or otherwise, for cash or for other consideration, payable at the time of the disposition or on credit. The Trustee may abandon without consideration any trust property that the Trustee determines does not warrant retention.

* * * * *

4.13 <u>Trustee's Discretionary Authority</u>. The Trustee shall have the discretion to determine the manner, time, circumstances, and conditions of the exercise of any right, power, or authority vested in the Trustee, including making contracts or transactions affecting property that extend beyond the term of the trust.

The quoted provisions do not authorize a trustee to substantively modify the trust provisions. Pursuant to Louisiana's trust code, only the settlor himself can modify the terms of the trust if he expressly reserves the right to do so. La. R.S. 9:2021. The trust code further specifically prohibits the settlor from delegating the right to modify non-administrative provisions of the trust. *See* La. R.S. 9:2025. Any attempt to do so would violate public policy, rendering the violation an absolute nullity. *Albritton*, 600 So. 2d at 1332.

Furthermore, the record does not reflect that Jesse attempted to modify or revoke the trust in its entirety as Christine suggests. On January 11, 2007, as surviving settlor and trustee, Jesse executed an amendment to the agreement that acknowledged the irrevocability of the trust as to Lillie's share, and amended "his share of the Trust" to delete the share of the trust allocated for the benefit of Frances. Additionally, "in accordance with his right to revoke or amend his share of the Trust," Jesse removed Frances "as the successor Trustee of the Surviving Settlor's share of the Trust."

On October 24, 2007, individually and as surviving settlor, Jesse executed a revocation of the trust, which again acknowledged the irrevocability of the trust "as to the undivided one-half (1/2) interest of the deceased spouse in the community of acquets and gains which had been transferred to the Trust and was held by the trustee of the Trust at her death." Jesse revoked the trust "to the fullest extent permitted by

6

law, including but not limited to that part of said Trust(s) holding all or part of *his* undivided one-half (1/2) interest" in community property and all of his interest in his separate property. (Emphasis added.) He further demanded return of all of *his* property, including but not limited to his interest in community property and separate property, intending that upon his death it be disposed of according to his testament or as otherwise provided by law.

The documentary evidence establishes Jesse amended then revoked only the surviving settlor's trust, which held his share of the community property and his separate property. Jesse did not attempt to revoke the trust as to Lillie's share. Nor did Jesse, as trustee, attempt to remove Lillie's share of the trust property from the trust. This is specifically reflected in the act of donation Jesse executed in May 2008, where he specifically donated to Christine his interest in the immovable properties, identified as his undivided one-half interest in the properties as well as any other right, title or interest he had in the properties.

It was not until the notarial act of correction that there was any attempt to donate full ownership of the properties. Frances attacked the validity of the act of correction, contending the error it purported to correct was substantive rather than clerical.

Louisiana Revised Statutes 35:2.1[2] authorizes the notary before whom an act affecting immovable property was passed to execute an act of correction to correct a clerical error. The statute specifically limits an act of correction to the correction of a clerical error that does not alter the true agreement and intent of the parties. *See* La. R.S. 35.2.1B; *First Nat. Bank, USA v. DDS Const., LLC*, 11-1418 (La. 1/24/12), 91 So. 3d 944, 957. A clerical error is one that results from a minor mistake or inadvertence, rather than from judicial reasoning or determination. *First Nat. Bank,*

---

[2] Louisiana Revised Statutes 35:2.1 was amended in 2012; however, the statute prohibited substantive alterations both before and after the amendment.

*USA*, 91 So. 3d at 955 (*quoting* Black's Law Dictionary 622 (9th ed. 2009)). An act of correction may not be used to correct substantive errors. *Cockerham v. Cockerham*, 12-1769 (La. App. 1 Cir. 10/3/13), 201 So. 3d 253, 262.

The act of correction stated the notary made an error in the act of donation's appearance clause by incorrectly stating Jesse appeared individually, "when in truth and in fact, the property was owned by The Jesse R. Coleman, Sr. and Lillie E. Coleman Revocable Living Trust." The act of correction stated it was made to correct the appearance clause to show that Jesse appeared as trustee of the trust, which owned the property in full, and that full and complete ownership was conveyed to Christine.

The errors purportedly corrected by the act of correction included the owner of the property being donated, the donor, and the conveyance of full ownership rather than a one-half interest in the property. This court has previously held that an error in the conveyance of an undivided one-half interest in property versus full ownership of the property was substantive, and could not be corrected by a notarial act of correction. *Cockerham*, 201 So. 3d at 262. We agree, noting too that the evidence clearly refutes the act of correction's statement that the property was fully owned by the trust at the time of the act of donation in 2008, since Jesse revoked the trust as to his share of community and separate property in 2007. The act of correction was invalid to transfer full ownership of the property to Christine. Consequently, the trial court erred in ordering, adjudging, and decreeing that Christine is the full owner of the three pieces of immovable property.

Frances next argues Jesse breached his duty as trustee of the Lillie E. Coleman Trust to its principal beneficiaries by failing to administer the trust property as a prudent administrator, and his estate should be charged with the losses resulting from the breach. She argues that during his tenure as trustee, Jesse failed to administer the trust solely for the benefit of the trust beneficiaries. As evidence, she cites his

failure to separate trust property from his separate property following Lillie's death and his revocation of the trust, cash advances Christine made from a community account, Christine's closure of an account held in the trust, Jesse's donation of immovable property to Christine, and other favoritism shown to Christine.

Louisiana law provides that a trustee shall administer the trust solely in the interest of the beneficiary. When there is more than one beneficiary, a trustee shall administer the trust impartially, based on what is fair and reasonable to all of the beneficiaries, except to the extent that the trust instrument manifests an intention that the trustee shall or may favor one or more of the beneficiaries. La. R.S. 9:2082. The trustee shall administer the trust as a prudent person. La. R.S. 9:2090. The trustee shall also take, keep control of, and preserve trust property. La. R.S. 9:2091. The trustee is commanded to defend actions that may result in a loss to the trust estate, unless doing so would not be reasonable. La. R.S. 9:2093.

The powers of the trustee are those conferred upon the trustee by the trust instrument or those that are necessary or appropriate to carry out the purposes of the trust (and not forbidden by the trust instrument). La. R.S. 9:2111. If discretion is conferred upon a trustee with respect to the exercise of a power, its exercise of discretion shall not be subject to control by the court, except to prevent an abuse of discretion by a trustee. La. R.S. 9:2115. A trustee may incur expenses necessary to carry out the purposes of the trust, not forbidden by the trust instrument, and other expenses authorized by the provisions of the trust instrument. La. R.S. 9:2117.

Louisiana law does not define breach of a trustee's duty in terms of dishonesty, ulterior motives, and malintentions. Rather, the statutory provisions of the Trust Code set forth numerous duties imposing "the very highest possible fiduciary responsibility on the trustee towards the beneficiaries," requiring the trustee to be "chaste in all dealings with the beneficiary," and imposing upon the trustee a "fundamental duty of... loyalty," and then very simply defines "breach" as

9

"[a] violation ... of a duty." *See* La. R.S. 9:2081; 1964 Comment (c) to La. R.S. 9:2082; *Chouest v. Chouest*, 18-1484 (La. App. 1 Cir. 12/19/19), ___ So. 3d ___, ___ (2019WL6906974, *5) (*quoting Succession of Dunham*, 408 So. 2d 888, 900-01 (La. 1981)).

As discussed herein, the trust agreement specifically allowed Jesse to revoke the trust as to his share of community property and his separate property following Lillie's death. Therefore, his actions in doing so cannot constitute a breach. Further, to the extent Frances's argument is premised on the purported donation of full ownership of the immovable property, it is without merit given our determination regarding the donation and invalidity of the act of correction.

Section 4.13 of the trust agreement, previously quoted herein, grants the trustee broad discretionary authority with regard to the trust property. Section 4.17 of the trust agreement further provides "The Trustee shall have the power to manage, control, operate, divide, improve, alter, make additions to, and repair trust property." All of the remaining actions taken by Jesse, which Frances argues constitute a breach of his duty as trustee, fall within the discretionary authority afforded him by the trust agreement. We find no error in the trial court's rejection of these claims.

## CONCLUSION

Pursuant to the act of donation, Jesse conveyed to Christine an undivided one-half interest in the immovable property described in the judgment. The other undivided one-half interest was property of the trust. Allocation of the trust property was not before the trial court in this succession proceeding; therefore, we amend the trial court's December 3, 2018 judgment to reflect that Christine D. Coleman is the owner of an undivided one-half interest in the described immovable property. As amended, the judgment is affirmed. Costs of this appeal are assessed equally between Frances C. Dake and Christine D. Coleman.

**AMENDED AND AFFIRMED AS AMENDED.**

10