NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-687

IN RE: THE NORMAND AND IRENE MORIN

IRREVOCABLE INTER VIVOS TRUST

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-1538
HONORABLE DERRICK D. KEE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. LARRY VIDRINE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Jonathan W. Perry, and J. Larry Vidrine\*, Judges.

**AFFIRMED.**

_____

\*Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Timothy O'Dowd**
**O'Dowd Law Firm LLC**
**924 Hodges Street**
**Lake Charles, LA 70601**
**(337) 310-2304**
**COUNSEL FOR APPELLANT:**
    **Patrice Morin-Resch**

**David L. Sigler**
**John-Michael Lomzenski**
**Sigler, Arabie & Cannon**
**630 Kirby Street**
**Lake Charles, LA  70601**
**(337) 439-2033**
**COUNSEL FOR APPELLANT:**
    **Patrice Morin-Resch**

**Russell J. Stutes, Jr.**
**Shelley Bouillion**
**Stutes & Lavergne, LLC**
**600 Broad Street**
**Lake Charles, LA 70601**
**(337) 433-0022**
**COUNSEL FOR APPELLEE:**
    **Norma Carroll Morin Voilleque**
    **Lise Suzanne Morin Cope**

**VIDRINE, Judge Pro Tempore,**

This appeal principally concerns one beneficiary's conflicting interpretation of a Trust's provisions.

The trial court concluded that the Trust established by Plaintiff-Appellant Patrice Therese Morin-Resch's mother Irene Morin did not leave a windfall to Ms. Resch at her four siblings' expense with respect to distributions not made to them by the 180th day following their mother's passing.

Ms. Resch argues that the trial court erred on procedural and substantive grounds in coming to this conclusion and that by her own calculation she was entitled to almost half of the Trust's value.

For the following reasons, we affirm the trial court's judgment in all respects.

## The Trust

The "Norman and Irene Morin Irrevocable Inter Vivos Trust" was established by Ms. Irene Motrin on May 20, 2019, several years after her husband Norman passed away. The Trust would not be funded until her demise, pursuant to a will executed the same date leaving all of her property to the Trust.

The Trust names each of her five children, including appellant, as beneficiaries and specifies that Appellant's four siblings would receive their respective shares from the Trust 180 days after her death. By contrast, Appellant's interest would remain in the Trust and be paid out over a ten-year period.

The Trust also confers broad discretion to its Co-Trustees. It specifies that the Co-Trustees do not need court permission to fulfill their obligations, nor "need [to] furnish bond or other security for faithful performance of their duties." The Trust further specifies that if any questions arose "as to whether the Co-Trustees have a particular power, the Trust shall be liberally construed as granting that power."

## Trial Court Proceedings

The issues raised by Ms. Resch flow principally from the following language contained in the Trust, with our emphasis added to the provisions most relevant to our current review:

### DURATION

. . . .

3.2 The Trust will terminate as to Norma Carroll Morin Voilleque, Irene Jeannette Morin Marek, Norman Paul Morin II and Lise Suzanne Morin Cope, <u>one hundred eighty (180) days following the death of Settlor. At that time, the Trust shall fully and completely terminate as to the aforementioned beneficiaries, and the accumulated income and all principal of their respective portions of the Trust shall be distributed to them respectively as set forth in Section 4.3 of this Trust.</u> Thereafter, Norma Carroll Morin Voilleque, Irene Jeannette Morin Marek, Norman Paul Morin II, and Lise Suzanne Morin Cope, <u>will not have any interest in the Trust and will not be entitled to any further distributions of trust income or principal.</u>

3.3 The portion of the Trust established for the benefit of Patrice Therese Morin Resch shall fully and finally terminate upon the tenth (10th) anniversary of the death of Settlor, Irene K. Morin.

### DISTRIBUTIONS

….

4.3 <u>Except as otherwise expressly provided for herein, upon the expiration of one hundred eighty (180) days following the death of Settlor, the Co-Trustees shall make the following distributions of accumulated income and principal from the Trust:</u>

i. <u>$1,379,878.00 shall be distributed to each of the following beneficiaries</u>: Norma Carroll Morin Voilleque, Irene Jeannette Morin Marek; Norman Paul Morin, II; and, Lise Suzanne Morin Cope.

ii. One-fifth (1/5) of the Trust corpus remaining after the distributions set forth in 4.3(i) shall be distributed to the following beneficiaries: Norma Carroll Morin Voilleque, Irene Jeannette Morin Marek; Norman Paul Morin, II; and, Lise Suzanne Morin Cope. Contemporaneously with the distributions set forth in 4.3(i) and this 4.3 (ii), the Trust will fully and completely terminate as to Norma Carroll Morin Voilleque, Irene Jeannette Morin Marek; Norman Paul Morin, II; and, Lise Suzanne Morin Cope.

4.4 *** [A]fter satisfaction of the distributions set forth in Sections 4.3(i), and (ii) above, the following described property shall remain in the Trust solely for the benefit of Patrice Therese Morin Resch, as successor income and principal beneficiary:

i. One-fifth (1/5) of the trust corpus remaining after the distributions set forth in 4.3(i) and 4.3(ii).

One-tenth of the retained corpus shall be distributed to Patrice Therese Morin Resch on an annual basis until, upon the tenth anniversary of Settlor's death, said portion of Trust terminates in accordance with Section 3.3 above. ****[1]

The Trust could not be funded without a Judgment of Possession transferring all of Ms. Irene Morin's assets to it pursuant to her will, but afterwards Co-Trustees' "Distribution Instructions" presented to the Court specified which assets were proposed to be distributed and to whom. These distributions included diverse assets, including cash, stock and immovable property. With respect to the latter, the four siblings' distributions included immovable property situated in Lake Charles and Colorado, and Plaintiff's proposed distribution included property in Dallas, condominiums and commercial income producing property deemed by the Trustees to be considerably more valuable.

The Co-Trustees calculated the assets of all five beneficiaries, including Plaintiff, to be an identical $1,379,878.00. However, owing to the greater estimated value of the Dallas property, it was proposed that Plaintiff' would receive less cash, especially after deducting $154,117.96 for a cash distribution she received July 20, 2019.

The Co-Trustees' "Distribution Instructions" were submitted_on April 24, 2020, more than 180 days after the settlor's passing.

---

[1] For context, the entire Trust accompanies this Opinion.

Throughout the course of this proceeding, Plaintiff has maintained that pursuant to Paragraph 3.2, whatever proceeds remained undistributed to her four siblings 180 days after Ms. Morin died on July 14, 2019, became hers alone since by the terms of the Trust her siblings would not have any interest in the Trust and would not be entitled to any further distributions. Defendants claim that this submission had been delayed in part by Plaintiff's own actions that slowed the Succession proceeding since the Judgment of Possession was required for the testator's assets to flow into the Trust to be distributed to any of the beneficiaries, including Plaintiff.

While Plaintiff filed suit to this effect,[2] this appeal arises from Judgments that resulted not from Plaintiff's suit, but from a Rule filed by Defendants on the same date they answered Plaintiff's suit.

Captioned "Trustees' Rule for Instructions and Opposition to Request for Security and Accounting," this Rule sought to have the Court formally ratify the Co-Trustees' recent disbursements of Trust proceeds that gave no effect to Plaintiff's disputed 180-day forfeiture. Citing the Trust's provisions, the Trustees' Rule also asked the Court to prospectively approve their plans moving forward.

The substantive claims made by Plaintiff in Reply to Defendants' Rule echo the claims she made in her lawsuit.

---

[2] Ms. Resch filed suit captioned "Petition for Instructions" on April 15, 2020, then amended it May 21, 2020, to add claims against the Trustees seeking their removal, damages for her emotional distress, and requesting that the Court require that Trustees furnish security to protect her interests in the event their value declined pending a final accounting. On June 25, 2020, Defendants answered her suit denying Plaintiff's proposed calculation as well as her amended petition's additional claims.

4

The initial hearing on this Rule occurred July 15, 2020.[3] Another was held March 29, 2021, supplemented with two issues raised later to be discussed in their appropriate place. These hearings resulted in Judgments in favor of Defendants that were signed July 22, 2020, and March 29, 2021,[4] form the basis of Plaintiff's current appeal, together with procedural exceptions Plaintiff filed shortly before the hearing.

## Plaintiff's Pretrial Procedural Issues
### *Summary Process, Improper Cumulation, and Continuance*

We will first address the Plaintiff's procedural claims.

On appeal, citing La. Code Civ. Pro. art. 1036 (B), Plaintiff argues that the trial court erred by permitting Defendants to utilize summary process since she had initiated the proceeding via ordinary process. In a similar vein, citing La. Code Civ. Pro. art. 462, Plaintiff maintains that the summary proceeding initiated by the Defendants should not have been cumulated with the Ordinary proceeding she had initiated. Alternatively, she maintains that the Court should have granted her Motion for Continuance that had been filed one week before the July 15 hearing on July 7, 2020.

In response, Defendants initially assert that Plaintiff had abandoned her dilatory exceptions when she did not argue them at the July 15 hearing.

---

[3] The Co-Trustee's Rule was actually set to be heard July 16, 2020, by Order signed June 25, 2020, but was rescheduled to July 15, to accommodate Plaintiff counsel's deposition schedule in another case.

[4] The original presiding judge authored Written Reasons addressing all of the issues scheduled to come up July 15, 2020, but the judgment signed a week later only addressed Plaintiff's request that Co-Trustees be ordered to furnish security, which it denied. Following the original judge's election to this Court, a successor judge later heard arguments March 2021 urged later by the parties, including a Motion for Entry of Judgment filed by Defendants and a Motion to Strike filed by Plaintiff. The successor judge signed the Judgment that had been previously prepared for the original judge, pursuant to the requirements spelled out in La. R.S. 13:4209, applicable to successor judges, affixing the original judge's name. The combined Judgments cover all of the issues forming the basis of Plaintiff's appeal.

5

We have reviewed the transcript of the hearing and it corroborates Defendants' version of the facts. Plaintiff never argued these issues even after being invited to do so. In fact, it was defense counsel who at the conclusion of the July 15 hearing inquired as to whether the trial court would like for the parties to address Plaintiff's exceptions. Counsel explicitly declined when the court directly offered Plaintiff the opportunity to do so after the parties' lengthy arguments on the merits.[5]

For the following reasons, we further conclude that the outcome of these procedural issues would have been no different even if they had been timely argued.

*Summary Proceeding*

Louisiana Revised Statutes 9:2233, contained in the Louisiana Trust Code and cited by both parties, explicitly permits the use of summary proceedings to resolve the penultimate issue raised by Trustees' application for instructions concerning the interpretation and administration of the Trust at issue:

> A. A trustee, a beneficiary, or a settlor in an ordinary or a summary proceeding may apply to the proper court for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust. An order of a proper court issued pursuant to such an application shall be full authority to act in accordance thereunder, and a trustee shall be fully protected from all claims of any person who has or who may subsequently acquire an interest in the trust property.
>
> B. A trustee may apply for instructions in ex parte proceedings. The order issued therein will protect a third party relying on the order, but will not exonerate a trustee from liability to a settlor or a beneficiary.

Louisiana Revised Statutes. 9:2233 does not prohibit parties from utilizing such summary proceedings to hasten the ability of any interested party to arrive at a

---

[5] [Defense Counsel]: … I just wanted to make sure that we itemized to the court, all the things that were set for hearing.

The Court: All right. Thank you, Mr. States [sic]. Anything else, Mr. O'Dowd?

[Plaintiff Counsel]: No, Your Honor. Not at this moment.

conclusion. In fact, it permits them, provided that such haste does not result in the denial of another party to its own right to a fair hearing.

Louisiana Code of Civil Procedure Article 2592 restricts the types of matters that can be heard by summary process and includes "(13) All other matters in which the law permits summary proceedings to be used." Louisiana Revised Statutes 9:2233 is such a law.

Furthermore, the Co-Trustees were not required by the Trust to seek the court's permission to take action. In fact, the Trust itself provides that:

> Except as may be otherwise required by applicable law, the Co-Trustees <u>shall not</u> be required to . . . account to any court or obtain the order or approval of any court in the exercise of any power or discretion granted by the Trust. [Trust 6.1 B; Emphasis ours.]

While the next provision of the Trust grants the Co-Executors the discretion "to obtain the order or approval of any court in the exercise of any power or discretion granted by the Trust," they were not required by the Trust to do so.

*Cumulation*

Neither do we find Plaintiff's improper cumulation argument convincing. As Defendants suggest, La.Code Civ.P. art. 465 provides that:

> When the court is of the opinion that it would simplify the proceedings, would permit a more orderly disposition of the case, or would otherwise be in the interest of justice, at any time prior to trial, it may order a separate trial of cumulated actions, even if the cumulation is proper.[6]

Furthermore, as an appellate court we are authorized to render any judgment that is just, legal, and proper upon the record on appeal. La.Code Civ.P. art. 2164.

---

[6] Comment (c) to this provision provides, in part: "The above article is also necessary to permit the orderly trial and disposition, through separate trials, of actions cumulated improperly, when the defendants do not object timely or properly to the improper joinder."

Given the evidence in the record, the substantive outcome of this suit's principal demands, regardless of ultimate outcome, would not have been affected by either the nature or summary nature these proceedings, nor by further unnecessary delay. See generally *Hebert v. Blanchard*, 97-550 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102.

From the start, it has been clear to all parties that resolution of the overarching question would turn on the basis of the language of the Trust agreement, and the transcript of the hearing that occurred July 16, 2020, shows that Counsel for both sides were well prepared to contest this principal issue that divided the parties. Both ably recited in detail the language of the Trust and both cited extensive legal authority in support of their clients' positions. Given the language of the Trust Agreement, the only evidence that really mattered, nothing in the record remotely establishes that Plaintiff had been deprived of her right to a fair hearing.

Thus, Plaintiff's arguments notwithstanding, Defendants were authorized by the Trust Code to use summary process, whether separately or cumulated with Plaintiff's original suit.

*Continuance*

Plaintiff also maintains that the trial court erred by failing to continue the matter.

As previously stated, Defendants maintain that Plaintiff abandoned this motion by never mentioning it or the need for additional time for discovery before or after charging straight into the merits of the dispute

Again, the transcript of the hearing corroborates Defendants' version of the facts. Besides, both sides acknowledged that the terms of the Trust Agreement itself would dictate the outcome of this dispute's central issues and the transcripts make clear that Plaintiff was well prepared for trial on the merits.

8

Therefore we affirm the finding of the trial court with respect to requests for continuance made before either of the hearings.

## Contested Substantive Issue

Next, we turn to the merits of the substantive issue raised by Plaintiff, whether Ms. Irene Morin as Settlor of the Trust intended to leave each of her five heirs their share of the Trust even though it took more than 180 days to distribute all of their proceeds or, conversely, whether by inserting the 180-day language the Settlor intended to exact such an enormous penalty on four of her children, and such an enormous windfall to a fifth.

Ms. Resch maintains that because her siblings did not receive their full 20% shares of the Trust's proceeds within 180 days, by the explicit terms of the Trust, she should be granted the windfall she requests, because after 180 days her four siblings' interest in the Trust had terminated, but not hers.

The trial court did not agree with Plaintiff's interpretation. Rather the court agreed with the Co-Executors' contention that her four sibling beneficiaries remained eligible to receive their originally prescribed shares notwithstanding the lapse of 180 days.

We agree with the trial court and affirm its findings.

The Trust did not state, or intend, that any of the heirs would forfeit their inheritance after the lapse of 180 days. Termination of the Trust in and of itself would not have precluded the orderly distribution of its assets to any of the beneficiaries. *Cockerham v. Cockerham*, 12-1769 (La.App. 1 Cir. 10/3/13), 201 So.3d 253. Thus, even assuming *arguendo* that the Trust had terminated with respect to the four beneficiaries, which we decline to find, they still would have had a claim

9

to their shares. Their interests would have simply been distributed outside of the terminated trust.

Likewise, nowhere does the Trust provide that Ms. Resch would inherit a windfall on this basis. Rather, the Trust provides that Ms. Resch's 20% could not be segregated from the corpus of the Trust *until after distribution* of her siblings' shares, as indicated by the language of the Trust we emphasize here (our emphasis added):

> 4.4 After the death of Settlor, Irene K. Morin, <u>and after satisfaction of the distributions</u> set forth in 4.3(i) and (ii) above, the following described party shall remain in the Trust solely for the benefit of Patrice Morin Resch, as successor income and principal beneficiary:
>
> i.    <u>One-fifth (1/5) of the trust corpus</u> remaining *after the distributions* set forth in 4.3 (i) and 4.3 (ii).

In brief, both parties cite La.R.S. 9:1753, which provides:

> No particular language is required to create a trust, but it must clearly appear that the creation of a trust is intended.
>
> A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation.

However, the only interpretation of the Trust that can sustain Paragraph 4.4 (i)'s provision leaving to Plaintiff 1/5 of the trust corpus *after satisfaction of the distributions* to her siblings is the one advanced by the Co-Trustees and embraced by the trial court.

## Other Specified Issues

*Posting of Security*

We similarly affirm the trial court's conclusion that Defendants were not required to post security.

10

Paragraph 7.4 of the Trust Agreement specifically states (emphasis added), "The Co-Trustees need <u>not</u> furnish bond or other security for faithful performance of their duties hereunder." This provision is clearly authorized by La.R.S. 9:2171 of the Trust Code, which states that "A corporate trustee need not furnish security unless security is required by the trust instrument."

Louisiana Revised Statutes 9:2171 is clear and free of ambiguity. Thus its letter shall not be disregarded by us under the pretext of pursuing its spirit. La.R.S. 1:4.

We are mindful of the concerns expressed by Plaintiff with respect to the resources she looks forward to receiving. However, given the foregoing, her interests must be protected by other provisions of the Trust Agreement and Trust Code, including its mandatory accounting requirement set forth in La.R.S. 9:2088.

*Disclosure and Recusal*

Plaintiff also filed a motion to recuse the original judge after the initial hearing. Her motion was filed on August 24, 2020, twelve days after the judge assigned Written Reasons, and just over one month after the original July 22 Judgment decreed that no security would have to be posted by the Co-executors. This motion was eventually referred to another division of the court, where it languished, as no hearing had been requested by Plaintiff in the approximately seven months before the March 2021 hearing.

As suggested by Defendants, without a hearing there could be no ruling by the trial court, and without a ruling this court has nothing to review on appeal. *Stewart Title of La. v. Chevron, U.S.A., Inc.*, 12-1369 (La. App. 4 Cir. 3/27/13), 112 So.3d 949, *writ denied,* 13-611 (La. 4/19/13), 112 So. 3d 227.

Therefore this issue is not ripe for our consideration.[7]

# Conclusion

For the foregoing reasons, the Judgments appealed from below are affirmed in all respects for the Written Reasons assigned by the original judge, at Plaintiff-Appellant's Costs.

**AFFIRMED.**

---

[7] Should the recusal motion be maintained, however, the parties should take note that our state's judicial recusal provisions were extensively revised by Act 143 of the 2021 Regular Legislative Session. Among other things, article 155 as amended now provides that only the Louisiana Supreme Court can appoint ad hoc judges to hear motions to recuse.